JOHN B. ROWLAND, Chief of Police City of Miami, and his successors in office, v. STATE, *ex rel.* RALPH MARTIN.

176 So. 545.

Division A.

Opinion Filed October 23, 1937.

*J. W. Watson, Jr.,* for Plaintiff in Error;

*Meyer, Davis & Weiss,* for Defendant in Error.

BUFORD, J.—Writ of error brings for review in habeas

corpus proceedings under which the petitioner was discharged.

Petitioner was charged with violating the provisions of Sec. 301 of Chapter 3 of the Building Code of the City of Miami. The affidavit against him was in three counts. Count 1 charged that he violated Sec. 301, Chapter 3 of the Building Code of the City of Miami known as Ordinance No. 1554 by unlawfully continuing to occupy the condemned building, structure, or part thereof, located at No. 132 N. E. Second Ave., Miami, Florida, after said building had been condemned.

The second count charges that he violated the same ordinance by failing to vacate the said building, structure or part thereof, in accordance with the time given in the notice by the building inspector to vacate said condemned premises.

The third count charges a violation of the ordinance by unlawfully resisting the building inspector in making safe the condemned building, structure or part thereof.

The ordinance is lengthy and no useful purpose can be served by setting out its terms here. It is sufficient to say that the ordinance purports to authorize the building inspector to examine property and to determine himself whether or not it is safe or unsafe and thereupon, if he sees proper to do so, to condemn the building and to enforce his orders of condemnation. There is no provision in the ordinance whereby the owner or occupant of the building is given any opportunity to be heard and there is no provision in the ordinance requiring a determination of the question as to whether or not the building or structure is in such condition to warrant condemnation or in such condition as to be a public nuisance or is a menace to the health or safety to the community by any tribunal, board

or officer except the building inspector. The ordinance attempts to make the building inspector the informant, the judge, the jury and the executive officer and provides no means of redress in the event this official should wrongfully evict an owner or tenant either because of bad judgment or bad motives. It purports to give the building inspector the power to declare that a thing is a nuisance, though it is not declared so to be by statute.

The Circuit Judge held that the ordinance was invalid. The ordinance cannot be held valid either as the authority for the exercise of the police power to abate a nuisance or as authority for the exercise of police power to condemn and destroy private property. Unless property is within that class which is designated and condemned by statute or the common law as a nuisance, the determination of the question as to whether or not it is a nuisance becomes a judicial one and its final determination cannot be effectuated by an administrative officer or board. See Crossman v. City of Galveston, 112 Tex. 303, 247, S. W. 801; also Yates v. City of Milwaukee, 77 U. S. 497, 19 L. Ed. 984.

Before private property may be condemned and destroyed in the exercise of police power, except in cases of emergency, there must be an opportunity for the owner or occupant to be heard and an orderly determination of the issue as to whether or not the property is subject to condemnation under reasonable police regulations. A case directly in point is that of Rosenberg v. Sheen, 77 N. J. Equity 476, 77 Atl. 1019, where the court said:

"The adjudication of the building department of Atlantic City in condemning the building in question as unsafe is made the basis of the claim of right upon the part of defendant Sheen to destroy the building. That adjudication

is manifestly void. It is neither in accordance with the ordinance under which it is made, nor in accordance with well established and fundamental rules of law. The condemnation ordinance contemplates that an unsafe building shall be repaired or torn down, unless the building inspector shall declare that the building cannot be made safe, in which latter event it may be ordered torn down.

"In the present case no adjudication appears to have been made to the effect that the building cannot be made safe; the building is ordered torn down without any declaration of that nature. If such a declaration was made the evidence of it rests alone in the mind of the building inspector, and is wholly a matter of inference. But it is entirely manifest that no action upon the part of the building inspector can be supported as a justification for the destruction of complainant's property rights unless some opportunity has been first given to complainants to be heard. A condemnation of a building made in the manner in which the condemnation in question has manifestly been made cannot be treated as in any sense a judicial determination. Without some notice to complainants it is of no more force than though it had not been made. It is, at most, a ministerial act; it fails to embody the first essential element of an adjudication. As the present conduct of defendant Sheen in attempting to tear down the building can find justification only in the claim that a lawful condemnation of the building has been made by the city, it is manifest that complainants are entitled to relief against his acts."

It will be noted that the Court said: "But it is entirely manifest that no action upon the part of the building inspector can be supported as a justification for the destruction of complainant's property rights unless some opportunity has been first given to complainant to be heard."

It is true that the ordinance here under consideration provides for notice to be given to the owner or occupant of the building but to be valid it should go further and provide that after notice an opportunity will be given the owner or occupant to be heard and have his rights adjudicated.

In 3 McQuillin, Municipal Corporation, 2nd Ed. Section 1020, p. 299, the author says:

"Ordinances often require unsafe buildings to be repaired, pursuant to municipal regulations, or else be torn down by the corporate authorities. Obviously such requirement is strictly within the police power and essential to the public safety. However, in the exercise of such power the acting officers must observe the property rights of the owner. Uness it is apparent that the delay would imperil life and limb, usually, the offending building must be condemned, and notice and hearing given the owner or agent, and an adjudication that the structure is a nuisance declared. However, it should be borne in mind that 'police powers of this character are of a high order, and when a case arises should be speedily exercised. Delay incident to the ordinary process of law' would seriously impair their efficiency and could not be tolerated."

We recognize the fact that the police power is a very broad one and that its exercise is necessary for the welfare of the community but the right to exercise police power does not carry with it the unqualified right to destroy private property without due process of law. In emergencies such as those which are often caused by conflagrations, floods, windstorms, etc., it may become lawful to destroy private property without notice and without hearing for the protection of the public and in such instances the right of the individual will yield to the right and for the benefit of the

public at large, but in the normal and orderly course of events, this necessity does not arise and the rights of the citizen to the acquisition and enjoyment of property must be respected at least to the extent of giving him the right to be heard before his property is taken without compensation and without a hearing before some tribunal authorized to determine the necessity and propriety thereof.

The judgment should be affirmed and it is so ordered.

ELLIS, C. J., and TERRELL, J., concur.

WHITFIELD, P. J., and BROWN and CHAPMAN, J. J., concur in the opinion and judgment.