## CITY OF HOUSTON V. ANEETH P. LURIE.

No. A-2275. Decided November 23, 1949.
Rehearing overruled December 21, 1949.
(224 S. W., 2d Series, 871.)

392

*Will Sears*, City Attorney and *Joseph C. Johnson*, Assistant City Attorney for the City of Houston, for petitioners.

It was error for the Court of Civil Appeals to hold that the

question of the existence and repairability of each individual fire hazard must be submitted to the jury, which would require the submission of evidentiary and non-controlling issues. Brown v. Federal Land Bank of Houston, 180 S. W. (2d) 647; Atterbery v. Henwood, 177 S. W. (2d) 95; Wichita Falls & Okla. Ry. Co. v. Pepper, 134 Texas, 360, 135 S. W. (2d) 79.

*Madison Rayburn* and *Harry Brochstein,* both of Houston, for respondent.

Wooden buildings are not a nuisance in themselves. It is the use to which they are put or the condition in which they are being maintained, and the question of their being a nuisance is a justiciable one. Miller v. Burch, 32 Texas 208; Landwer v. Fuller, 187 S. W. (2d) 670, 673; City of Wills Point v. Deen, 192 S. W. (2d) 940.

MR. JUSTICE SMEDLEY delivered the opinion of the Court.

The City of Houston, a home rule city, files this suit for judgment declaring two wooden buildings owned by respondent, Mrs. Aneeth P. Lurie, in the City of Houston, to be serious fire hazards to life and property and ordering their abatement by demolition. The jury, in answer to special issues submitted separately as to the two buildings, found that the two story building constitutes a serious fire hazard to life and property but that it can be repaired so as no longer to constitute a serious fire hazard, without undertaking repairs amounting to a substantial reconstruction of the building; and found as to the three story building that it constitutes a serious fire hazard and cannot be repaired so as no longer to constitute a serious fire hazard, without substantial reconstruction of the building. On motion of petitioner the trial court disregarded the jury's finding that the two story building can be repaired and rendered judgment declaring both buildings to be public nuisances and ordering their complete demolition.

The Court of Civil Appeals reversed the trial court's judgment and remanded the cause, holding that there was error in the submission of the special issues. 220 S. W. (2d) 320.

Petitioner, the City of Houston, in seeking to obtain the demolition of the two buildings, acted under its ordinance which contains in substance the following provisions: A Fire Hazard Inspection Committee is created consisting of the Director of Public Works, the Chief of the Fire Department and the Fire Marshal of the city. Whenever the City Council receives infor-

mation that any building is a serious hazard to life and property and directs the Committee to investigate the building, it is the duty of the Committee to make investigation and hold a hearing after notice to the owner and then to make full report with recommendations to the Council. The report is considered by the Council at its first regular or special meeting, the owner being given the right to be heard and present witnesses. The Council, after hearing the report and the witnesses, makes its conclusions as to what action shall be taken. If the Council finds that the building is a serious fire hazard to life and property but that measures can be taken to remove the dangerous conditions and render the building safe, it specifies the measures and orders the property owner to correct the condition in accordance with its directions. The owner may at his discretion comply with the order or demolish the building. If the Council finds that the conditions rendering the building a serious fire hazard cannot be corrected, it declares the building to be a nuisance and orders its demolition. The ordinance provides that if the owner fails to comply with the order of the City Council within the time specified the City Attorney shall "file suit in the proper court against such owner and obtain the necessary orders and process of said court to enforce the orders of the City Council."

The officials of the City of Houston proceeded regularly under the ordinance, and on March 3, 1948, the City Council passed an ordinance declaring respondent's buildings to be public nuisances and ordering her to demolish them completely within fifty days. The petition filed herein by the City alleges the facts relied upon as making the buildings serious fire hazards and nuisances, sets out the steps taken by the city officials and the ordinance passed and the failure of the respondent to comply with the order, and prays for judgment against respondent requiring her to demolish the buildings.

Petitioner invokes the substantial evidence rule and argues that because substantial evidence offered and admitted on the trial in district court reasonably supports the findings of the City Council in its ordinance declaring the buildings to be serious fire hazards not subject to repair, the court should have rendered judgment for petitioner without submitting the case to the jury or should have instructed a verdict for petitioner.

In our opinion the substantial evidence rule is not applicable to this case.

■ To support its contention that the rule does apply to this case petitioner invokes: the police power granted to the City

in broad and general terms by its charter; the provision of Section 25 of Article 1175, Revised Civil Statutes of 1925, which authorizes home rule cites "to provide for the condemnation of dangerous structures or buildings or dilapidated buildings or buildings calculated to increase the fire hazard, and the manner of their removal or destruction"; and the ordinance of the City of Houston under which the City has proceeded in this case, the substance of which has been stated above. None of these by its terms undertakes to define the scope of judicial review or to prescribe the procedure to be followed in a suit like this suit to compel the destruction of a building as a fire hazard. The charter and the statute contain grants in general terms of police power and of authority to provide for condemnation and removal or destruction of buildings that are dilapidated or dangerous or calculated to increase the fire hazard. The terms of the ordinance have been given above. Its final provision is that if the owner of the building fails to comply with the Council's order for repair or demolition, the City Attorney shall "file suit in the proper court" to obtain the necessary orders to enforce the order of the Council. The ordinance means that a suit must be filed and trial had and judgment rendered in court before destruction of the building can be compelled.

■  In several cases where the statute authorizing review of an administrative or executive order by appeal or the filing of suit did not expressly provide for full retrial of the facts as if there had been no findings made by the board or agency, it has been held that the review of the facts in court should be under the substantial evidence rule. Shupee v. Railroad Commission, 123 Texas 521, 73 S. W. (2d) 505; Railroad Commission of Texas v. Metro Bus Lines, Inc., 144 Texas 420, 191 S. W. (2d) 11; Fire Department, City of Fort Worth v. City of Fort Worth, 147 Texas 505, 217 S. W. (2d) 664; Casey Jones v. Marsh, 148 Texas 362, 224 S. W. (2d) 198, decided November 2, 1949. The basis of these decisions, primarily at least, is that the subject matter is a license or privilege as distinguished from a property right. The subject matter of the instant suit is quite different. The suit is brought to compel, under the police power, the destruction of property privately owned, and that without compensation to the owner.

It has repeatedly been held that the question whether property is a public nuisance and may be condemned as such is a justiciable question to be determined by a court. The leading case in this state involving that question is Crossman v. City of Galveston, 112 Texas 303, 247 S. W. 810, 26 A. L. R. 1210.

The opinion in that case contains the following:

"A wooden building, even though used as a livery stable, is not a nuisance per se. It can only become a nuisance by the use to which it is put or the state of repair in which it is maintained; *but as to whether or not it is, even in these events, a nuisance, is a justiciable question, determinable only by a court of competent jurisdiction.* The mere declaration of the City Commissioners that the building or its use constitutes a nuisance, does not make it so." (Emphasis added.)

■ The opinion in the Crossman case quotes with approval from Stockwell v. State, 110 Texas 550, 221 S. W. 932, 12 A. L. R. 1116, as follows:

"The State, in the exercise of its public power, may denominate certain things to be public nuisances, and because of their having that character provide for their summary abatement. This power is limited to declaring only those things to be such nuisance which are so in fact, since *even the State may not denounce that as a nuisance which is not in fact.* Tiedeman's Limitation of Police Power, section 122a. The police power is subordinate to the Construction, as is every other power of the government. Where the Legislature has found and defined as expressed in its statute, a certain thing to be a public nuisance, only in clear cases would courts be warranted in going behind its findings and determining the contrary. *But whether something not defined as a public nuisance by the statute is such under its general terms, is undoubtedly a judicial question.*

"The State may also remit to such agencies as health boards, or other proper administrative officers, the authority of determining whether other things constitute public nuisances, with the power to abate them. But where this is done, the determination of such boards or officers is not conclusive and cannot be made so, unless it be with respect to something having the nature of a public emergency, threatening public calamity, and presenting an imminent and controlling exigency before which, of necessity, all private rights must immediately give way. If this were not true, all property would be at the uncontrolled will of temporary administrative authorities, exercising, not judicial power, but purely executive powers. The result would be to subject the citizen's property solely to executive authority, putting it beyond the protection of the courts, and depriving the courts of their essential power of determining what, under the written law, is lawful and what is not—declaring the law of the land—and adjudging property rights accordingly.

"In speaking of the assertion that the declaring by such administrative authorities of certain things not presenting a public emergency, to be public nuisances, must be accepted as final and conclusive, Judge Miller, in Yates v. Milwaukee, 10 Wallace 497, characterized it as 'a doctrine not to be tolerated in this country'.

"Judge Cooley says this upon the subject, citing numerous authorities:

" *'Whether any particular thing or act is or is not permitted by law of the State must always be a judicial question, and therefore the question of what is and what is not a public nuisance must be judicial, and it is not competent to delegate it to the local legislative or administrative boards.'* Cooley's Constitutional Limitations, p. 742 note." (Emphasis added.)

In the City of Texarkana v. Reagan, 112 Texas 317, 322, 323, 247 S. W. 816, the court said:

"This case is controlled by the opinion of this Court in the case of Crossman v. City of Galveston, supra. Under that case and the authorities there cited, neither the Legislature nor the City Council can by a declaration make that a nuisance which is not in fact a nuisance; *and the question as to whether or not the building here involved was a nuisance, was a justiciable question, determinable alone by the court or jury trying the case.* * * *

*        *        *        *        *        *        *        *        *        *

*"Whether or not the building here in controversy was in fact a nuisance, is to be established by legal and competent evidence, in the same manner as any other fact, and the burden is upon the City to do this."* (Emphasis added.)

For other authorities holding that unless property is within the class designated and condemned by statute or the common law as a nuisance, the question whether it is in fact a nuisance is a judicial one, the final determination of which cannot be delegated to an administrative board or agency, see: Bielecki v. City of Port Arthur, (Com. App.) 12 S. W. (2d) 976; Rowland v. State of Florida, 129 Fla. 662, 176 So. 545, 114 A. L. R. 443; State of Nebraska v. Keller, 108 Neb. 742, 189 N. W. 374, 25 A. L. R. 115; 39 Am. Jur., pp. 294-295, Sec. 13, p. 296, Sec. 15; 46 C. J. 812, Sec. 469; see also Board of Water Engineers v. McKnight, 111 Texas 82, 229 S. W. 301.

■ It is true, as suggested by petitioner, that the Crossman

case and other authorities above cited are not directly decisive of the very question before us, but they are cited and quoted because of the important principle announced by them that the property owner is not to be deprived of his right to a judicial determination of the question whether his property is a public nuisance to be abated by demolition. The authority to decide such a question involves the exercise of judicial discretion, and ordinarily includes the authority to weigh evidence, to make findings of fact, and to apply rules of law. It may well be doubted that a limited review of the facts, as under the substantial evidence rule, would amount to a judicial determination of the justiciable question here involved. Trial under that rule would not establish whether or not the buildings are in fact a nuisance, "in the same manner as any other fact." Crossman v. City of Galveston, 112 Texas 303, 315 247 S. W. 810, 815, 26 A. L. R. 1210; City of Texarkana v. Reagan, 112 Texas 317, 323, 247 S. W. 816, 818. Certainly he would not be justified in applying the substantial evidence rule to this case when there is nothing in the statutes, including the home rule enabling act, or in the city's charter or in the city's ordinance, express-- ing an intention that the suit be tried under that rule.

By objections to the special issues submitted and by requested special issues respondent makes the contention, sustained by the Court of Civil Appeals, that the trial court, instead of submitting issues inquiring whether the buildings are serious fire hazards to life and property, should have submitted to the jury for its determination the several facts alleged in the petition as to the construction, maintenance, condition and use of the buildings which according to the petition make or cause the buildings to be fire hazards.

■ The petition alleges that the buildings are so constructed as to promote the spread of fire, that exits are inadequate, hallways narrow and poorly lighted, tenement rooms small, crowded and without proper exits, electric wiring hazardous and unsafe, flues cracked, stairs and porches on the second floor badly rotted, partitions made of single boards, many of pasteboard, the buildings rotten, deteriorated and in unsound condition, that kerosene is used for heating and lighting, and is stored in open bottles and cans, that fifty adults and fifteen children are living in the buildings, etc. Following these allegations of fact the further allegation is made that "due to the foregoing conditions" the wooden buildings and their occupancy as tenements are serious fire hazards to life and property, and particularly to the occupants of the buildings. Respondent would have the trial court submit to the jury as separate issues each

of the foregoing allegations of fact with respect to the construction, condition, maintenance and use of the buildings.

Rule 279 requires the court to submit "the controlling issues made by the written pleadings and the evidence." In our opinion, the court submitted the controlling issues when it requested the jury to find as to each of the buildings whether it constitutes a serious fire hazard to life and property and whether it can be repaired without substantial reconstruction. The ultimate and controlling fact which the petitioner seeks to establish in this case is that the buildings in their construction, present condition and use are serious fire hazards. The several specific allegations that the buildings are dilapidated, of rotten material, cut into small rooms and halls, with narrow exits, partitions of wood and pasteboard, with unsafe wiring, cracked flues, and are overcrowded and the other specific allegations above referred to, are allegations of matters of fact that fall within the scope of the ultimate question. They are evidentiary in their character, being facts that tend to prove that the buildings are fire hazards, facts to be considered by the jury in answering the issues submitted. Scott v. Gardner, 137 Texas 628, 638, 156 S. W. (2d) 513, 141 A. L. R. 50; Leeder v. Leeder, 161 S. W. (2d) 1112, application for writ of error refused; San Augustine Independent School District v. Freelove, 195 S. W. (2d) 175, 180-181; Associated Employers Lloyds v. Zellerbach, 208 S. W. (2d) 136, 138; Dakan v. Humphreys, 190 S. W. (2d) 371, 375; Atterbery v. Henwood, 177 S. W. (2d) 95. It is our opinion, therefore that the Court of Civil Appeals erred in reversing the judgment of the trial court on account of the manner in which the case was submitted on special issues.

■ Respondent's brief as appellant in the Court of Civil Appeals contains a number of assignments of error attacking the trial court's judgment, but none of them questions, or seriously questions, the right of the City of Houston to institute and maintain a suit to obtain a judicial determination of the question whether a building is a serious fire hazard and a public nuisance. That right exists under the police power and by virtue of the express provision of Section 25 of Article 1175 of the Revised Civil Statutes, which authorizes home rule cities to provide of the condemnation of dangerous or dilapidated buildings or buildings calculated to increase the fire hazard. That the city has the right to maintain a suit of this character seems necessarily to follow from the above cited authorities holding that unless property is of the class condemned by statute or by the common law as a nuisance, the question whether

it is in fact a nuisance is for judicial determination. It should be added that exception to the rule requiring judicial determination is recognized "with respect to something having the nature of a public emergency, threatening public calamity, and presenting an imminent and controlling exigency." Stockwell v. State, 110 Texas 550, 555, 221 S. W. 932, 12 A. L. R. 1116.

■ The two story building owned by respondent was built in part in 1890 and in part in 1908, and additional rooms were added to it in 1921. The city has no record to show when the three story building was constructed, but there is testimony that it was standing as early as 1922. The two buildings were placed in a fire zone by ordinance passed in January, 1937. There is no evidence that either of the buildings was constructed in violation of a city ordinance. Respondent presents the contention that since the buildings were lawfully constructed they cannot be destroyed without compensation. This contention cannot be sustained. The city's petition alleges that the two buildings in their present condition are serious fire hazards, that they have become such by reason of their construction, dilapidation and deterioration, failure to maintain them, the division of them into small tenements by the building of wooden and pasteboard partitions, overcrowding, inadequate exits, defective wiring, etc. The jury's findings that the two buildings are serious fire hazards are supported by evidence. A wooden building lawfully erected before its locality was included in a fire zone may not be condemned as a nuisance merely because of wooden construction, and the right to repair it cannot be denied unless the repair should amount to a substantial reconstruction of the building"; but the building may become a nuisance "by the use to which it is put or by the state of repair in which it is maintained." It may be condemned as a nuisance after judicial determination of the fact that it is a nuisance and of the fact that the conditions which make it a nuisance cannot be corrected without making repairs that would amount to a substantial reconstruction of the building. Crossman v. City of Galveston, 112 Texas 303, 311, 247 S. W. 810, 26 A. L. R. 1210.

■ Under another assignment of error in respondent's brief in the Court of Civil Appeals it is argued that, by reason of one of the provisions of Articles 1067 of the Revised Civil Statutes, the city, to abate a wooden building as a nuisance, is required to establish as a fact that the building has been damaged to the extent of fifty per cent of its value by deterioration, fire, windstorm or other means. Article 1067, among other provisions, authorizes the City Council to "prohibit the rebuilding or re-

pairing of wooden buildings within the fire limit when the same shall have been damaged to the extent of fifty per cent of the value thereof." If it be assumed that Article 1067 applies to home rule cities, a question which we do not decide, the quoted portion of the article is in our opinion not subject to the construction given it by respondent. Apparently it was intended to apply to instances of damage done to wooden buildings by fire, windstorm or other disaster where the value and the extent of the damage can be ascertained as of the time of the occurrence of the disaster. Furthermore, there is no inconsistency between the quoted provision of that statute and the terms of the ordinance pursuant to which this suit was filed. The ordinance requires the City Council, if it concludes that a building is a serious fire hazard but that measures can be taken to remove the dangerous conditions and render the building safe, to specify the measures and order the owner to take them, and to declare the building a nuisance and order it demolished only when it concludes that the conditions rendering the building a serious fire hazard cannot be corrected by any measure. And there is no inconsistency between the quoted provision of Article 1067 and the manner in which this case was submitted to the jury, by special issues requiring the jury, as bases for the judgment sought by the City, to find first that the buildings are serious fire hazards and then that they cannot be repaired so as no longer to constitute serious fire hazards without making repairs amounting to a substantial reconstrution of the buildings.

After considering all of the assignments of error in the brief filed by respondent in the Court of Civil Appeals and reading the statement of facts, we find that none of those assignments presents reversible error except one that complains of the trial court's action in disregarding the jury's finding, in answer to a special issue, that the two story building can be repaired so as no longer to constitute a serious fire hazard without undertaking repairs amounting to a substantial reconstruction of the building. In our opinion that finding is not without support in the evidence.

The statement of facts contains much evidence showing the condition of the two story building, the state of repair in which it is maintained and the use to which it is put. Four witnesses testifying for petitioner, a real estate dealer and builder, one of the city's building inspectors, the city's arson investigator and its fire marshal, testified to their opinions that the building could not be repaired so as to remove the fire hazard without substantially reconstructing it.

On the other hand, the testimony of other witnesses at least tends to prove that the condition and the use of the building is such that the fire hazard may be removed or corrected without the making of repairs that would amount to a substantial reconstruction. Witnesses for respondent testified in substance that while the building is in need of repairs and part of the material in it is deteriorated, the greater part of the rafters, frames and siding in the building is sound, the roof in good condition, with no leaks, and most of the foundation sound.

Respondent's son, who had charge of the building from 1937 to 1947, renting it to negro tenants, testified that in 1946 he received a condemnation notice from the city requiring him to vacate the building, and that as soon as he could do so he caused the building to be vacated and on order of the City started to demolish it; that after removing the roof and siding he found that the building was still good and could be repaired, and then he undertook to make the needed repairs. He testified further that from July, 1946, to September, 1947, he made extensive repairs, expending $7,000.00 for labor and material. Some of the expenditures were for the building of porches on the two story building. A building and an engineer, who were called as witnesses for respondent, testified that the porches are structurally unsound and should be removed, and that the repairs, or some of them, had been made by using green lumber and unskilled labor.

The witness James, a builder and contractor of many years' experience, after inspecting the building, testified that the condition of the foundation is very good and the sills, joists and rafters in good condition as far as he could see them, that he saw nothing wrong with the roof, that the siding needed renailing and painting, and as to the condition of the siding, about fifteen per cent repair would put it back in normal condition. He testified further as to the general condition of the building that it is seventy-five to eighty-five per cent sound. When asked on cross examination whether to repair and place the building in good shape it would be necessary to tear it down and salvage what could be obtained from it, he answered that he would not think so.

The testimony of the witness Niven, an experienced structural engineer, as to the condition of the building is substantially the same as that of the witness James. He expressed the opinion, based upon his inspection, that the building is approximately seventy-five per cent sound. He gave an unqualified affirmative answer when asked whether or not the building could

be repaired and is "repairable so that the twenty-five per cent of unsoundness that you mention could be repaired." He also testified that if he were asked to put the building in sound condition he would tear off what had been "tacked on", amounting to about twenty-five per cent of the whole building, and that he would then have a building of "old sound lumber, which is better than new lumber."

Neither of the two witnesses last mentioned testified in so many words that the conditions which have made the building a serious fire hazard can be corrected without substantially reconstructing the building, but they did testify to the soundness and good condtion of the important parts of the structure, and expressed their opinions that the building as a whole is seventy-five to eighty-five per cent sound, and in substance that it can be placed in good or sound condition by tearing away parts that have been "tacked on" and making repairs that would not amount to reconstruction.

From this testimony and other evidence in the record showing the condition and use of the building that have caused it to become a serious fire hazard, it may reasonably be inferred that the condition and use can be corrected by repairs short of reconstruction and by sufficient changes in use. The wooden building was constructed long before the fire zone was created and it was used by respondent and her family as their home until 1937, when they moved to a better location. Negroes came to live in that part of the city until it soon became a negro community. Changes were made in the building by the construction of wooden and pasteboard partitions dividing it into small apartments with narrow hallways and exits, and the apartments are occupied by many negro tenants. It is in the main by reason of these changes, and failure to keep the building in good repair, with consequent deterioration, and by reason of overcrowding, that the building has become a serious hazard. These are conditions that can be remedied if in fact, as witnesses for respondent testified, the building is seventy-five per cent sound.

There is testimony as to a small open area or patio near the center of the building, and that this part of the construction increases the fire hazard. This of itself is not conclusive evidence, as petitioner insists, that the building is a serious fire hazard that should be demolished as a public nuisance; nor does it conclusively prove that corrections cannot be made without substantially reconstructing the building.

■ In view of the jury's finding, supported by evidence, and the rule announced in the Crossman case, the trial court's judgment ordering the demolition of the two story building is erroneous. The rule is:

"The building having been lawfully erected before its locality was included within the fire limits, it could not, merely because of wooden construction, be condemned as a nuisance, nor could the right of repair be denied, unless the repair should amount to a substantial reconstruction of the building.

\* \* \* \* \* \* \* \* \* \*

"Since it is clear that the owners of a building lawfully erected have a vested property right in the building, it necessarily follows that they have the right to repair the building so as to keep it fit for use. To deny this is to deny the enjoyment of the property right itself." Crossman v. City of Galveston, 112 Texas 303, 311, 247 S. W. 810, 26 A. L. R. 1210.

The quoted rule is an application of the principle that, while the right exists in the exercise of the police power to destroy property which is a menace to public safety or health, public necessity is the limit of the right and the property cannot be destroyed if the conditions which make it a menace can be abated in any other recognized way. Polsgrove v. Moss, 154 Ky. 408, 157 S. W. 1133; 39 Am. Jur. pp. 461-462, Sec. 186; 62 C. J. S. pp. 631-632, Sec. 281; Crossman v. City of Galveston, 112 Texas 303, 316, 247 S. W. 810, 26 A. L. R. 1210.

The city ordinance for the enforcement of which the suit was filed does not specify measures to remove dangerous conditions of the buildings and order respondent to take them, but it orders the demolition of the buildings, and this suit is for demolition and not for judgment requiring correction of dangerous conditions.

■ Since the trial court erred in sustaining petitioner's motion to disregard a finding of the jury and petitioner in its briefs has presented no prejudicial error committed against it over its objection on the trial, it becomes our duty to render the judgment on the verdict that the trial court should have rendered. Rule 324; LeMaster v. Fort Worth Transit Co., 138 Texas 512, 518, 160 S. W. (2d) 224.

The judgment of the Court of Civil Appeals is reversed. The judgment of the trial court is affirmed in so far as it affects the three story wooden building owned by respondent and situated

in the rear of and southerly of respondent's two story wooden building known as 2410-2412 Leeland Avenue in the City of Houston; and the trial court's judgment, in so far as it affects the said two story building, is reversed and judgment is here rendered that the petitioner take nothing by its suit as to that building. This judgment is without prejudice to the right of petitioner to proceed under its ordinance and by action of the City Council to require measures to be taken to remove dangerous conditions and to render the said two story building safe and, if necessary, to institute suit to enforce the order that may be made by the City Council. Costs incident to the appeal to the Court of Civil Appeals are taxed against petitioner and costs in this Court are taxed against respondent.

Opinion delivered November 23, 1949.

Rehearing overruled December 21, 1949.