DONELSON v. FAIRMONT FOODS CO.
No. 3057.

Court of Civil Appeals of Texas. Waco.
Nov. 6, 1952.

Rehearing Denied Nov. 26, 1952.

Bennett & Bennett, Normangee, for appellant.

Charles C. Smith, Jr., Cameron, for appellee.

HALE, Justice.

Appellee, Fairmont Foods Company, a corporation, sued appellant, Dewitt Donelson, for $6,179.88 and attorneys' fees alleged to be the balance due it under three chattel mortgage agreements, hereafter referred to as the contracts, a copy of each contract being attached to its trial petition. Each contract recited that appellant, the mortgagor, was a grower of poultry by occupation and that the mortgage evidenced thereby was given to secure appellee in the payment of moneys advanced and to be advanced by it to or on behalf of appellant for the purpose of financing him during the production period of a flock of turkeys covered in the mortgage. Appellant answered with a general denial and certain affirmative defenses, including a verified plea that the consideration for the execution of the contracts declared upon had partially failed in that there was a warranty, direct or implied, under the contracts that the poults to be furnished in pursuance thereof would be healthy, disease-free birds and that appellee breached such warranty by furnishing to him unhealthy, diseased birds to his loss and damage in the sum of $6,800. In a pre-trial hearing appellant admitted the execution of the contracts sued upon and conceded that appellee was entitled to recover the amount for which it sued unless its right of recovery was defeated in whole or in part by his plea that the consideration for the execution of the contracts had partially failed.

The case was tried before a jury. Upon the conclusion of the evidence appellee duly presented its motion for a peremptory instruction, the substance thereof being that the evidence was insufficient to raise any fact issue for the jury as to whether it had made or breached the warranty alleged by appellant. The motion was overruled and the case was submitted to the jury on special issues. The jury found in effect that appellee agreed with appellant that the poults to be furnished by it would be free from disease, that thereafter appellee furnished poults to appellant that were diseased, and that such diseased poults so furnished infected other poults of appellant and resulted in the death of 8,000 poults for which appellant had paid appellee $6,400. Appellant seasonably moved the court to render judgment on the verdict to the effect that he go hence. Appellee moved the court to render judgment in its favor for the amount sued for, notwithstanding the verdict of the jury, such motion being based upon substantially the same grounds contained in its prior motion for a peremptory instruction. Appellant's motion for judgment on the verdict was overruled, appellee's motion for judgment non obstante veredicto was granted and judgment was accordingly rendered for it in the amount for which it sued.

By the points upon which his appeal is predicated, appellant says the trial court erred in granting appellee's motion to disregard the findings of the jury and in rendering judgment for appellee because he asserts that the pleadings and evidence properly raised the fact issues which were submitted to the jury and that the findings of the jury in response to such issues entitled him to a judgment in his favor. On the other hand, appellee says the court did not err in rendering judgment for it because it asserts that there was a fatal variance between the allegations contained in appellant's plea in avoidance and the evidence offered in support of the same in that the plea was based upon a written warranty while the evidence related only to an oral warranty and because there was neither pleading nor proof that the purported agent of appellee who orally warranted to appellant that the turkeys to be delivered to him would be free from disease had authority to make such warranty.

Each of the three contracts sued upon was signed by appellant and accepted by appellee. Each was evidenced by the same

printed form, the only difference between them being with reference to date of execution, the number of turkeys covered and the amount of money involved in each contract. They were dated May 17, May 26 and June 15 of 1950, covered 3,250 poults, 1,685 poults and 5,250 poults and involved $8,125, $4,212.50 and $13,125, respectively. Each contract consisted of 14 numbered sections and numerous additional subsections. Each recited that the purpose of the financing for which the mortgage was given as security was "to assist in a poultry development program of mutual benefit to the Mortgagor and the Mortgagee" and that in the interest thereof appellant agreed "to follow such program as shall be decided upon between the Mortgagor and the representative of the Mortgagee for the housing, feeding and general care of the birds covered by this Mortgage, including the purchase of necessary feeds to give to the birds at all times balanced feeding rations."

The contemplated program of poultry development was outlined in the contracts only in general terms, it being readily apparent that the parties intended to leave many of the details incident thereto open for future agreements to be arrived at as the project progressed. Under the terms of the contracts appellee stood to benefit from such program through the sale or advancement of poults and feed and through the exercise of its right to buy at its option from appellant at a fair price all marketable birds of good quality covered in the contracts after they had reached maturity. Appellants stood to benefit from the program through the net profits which he expected to derive from the sale of marketable birds to appellee after he had paid the cost of poults, feed, labor and other items of expense to be incurred by him during the period of production.

Upon the trial of the case appellant testified substantially as follows: he raised about 3,000 turkeys during the year of 1949 and had tentatively arranged with Burroughs Feed Mill to be associated with them in a turkey raising program during 1950 when on or about May 1, 1950 he was contacted by Rex Robinson and F. W. Rentchler as representatives of appellee concerning the matter; in discussing the subject with him Robinson and Rentchler stated that if appellant entered into the project with appellee they would furnish him with healthy poults; he agreed to enter into the program with appellee and thereafter received approximately 10,000 poults which he undertook to raise to maturity; about May 23 he received 1,185 poults from appellee and within three or four days after that date his poults began to die from a disease which he took to be para-typhoid; the poults he received on May 23 from appellee were infected with some kind of disease at the time he received them and the disease began to spread and his entire flock became infected with the disease, from which he lost approximately 8,500 poults, for which he had agreed to pay appellee about 80¢ each; shortly after receiving the sick poults on May 23 he notified Robinson and Rentchler of their diseased condition and they sent Fred Spretz to look over his flock; Spretz prescribed a course of treatment for the flock and appellant followed the prescribed course but his turkeys continued to die; Spretz returned and prescribed another course of treatment which appellant again followed but his turkeys continued to die in increasing numbers with the result that he was able to save only about 1,500 turkeys that were raised to maturity.

Rentchler, Robinson and Spretz each testified upon the trial that he was an employee of appellee at the times material to this suit, Rentchler being in charge of appellee's feed manufacturing and financing at Giddings, Texas, Robinson being appellee's sub-branch manager at Franklin, Texas, and Spretz being an expert in the diagnosis and treatment of poultry diseases. Rentchler testified that after a series of conferences with appellant in the early part of May in 1950, he agreed on behalf of appellee to finance appellant with at least 10,000 poults. "Q. Did you make that agreement in writing?

A. No, there was no written agreement on that. Q. Did you reduce your agreement to finance him to writing? A. Well, the only agreement we had was a general mortgage and a series of verbal agreements." Robinson testified that he inspected appellant's flock each week during the production period in 1950 and when appellant complained to him about his turkeys dying he arranged for the turkey doctor to treat them. Spretz testified that he was requested by Robinson to inspect the flock of turkeys which appellant was growing for appellee, that he did so and found they were suffering from what is known as coccidiosis and mycosis, the former being a contagious and the latter an infectious disease, and that he prescribed the course of treatment which he thought was indicated by the symptoms he found.

■■ We do not think there was a fatal variance between the allegations contained in appellant's plea in avoidance and the evidence adduced in support of the same. Appellant did not expressly plead whether the warranty relied upon by him was written or oral and in the absence of any exception thereto it appears to us that his pleading was broad enough to cover either a written or an oral warranty, whether such warranty be regarded as express or implied. It is said that an express warranty is "an affirmation of fact or a promise by seller, relating to goods, which has a natural tendency to induce the buyer to purchase and upon which he relies in purchasing the goods. * * * An express warranty is entirely a matter of contract, wherein the seller may define or limit his obligation respecting the subject of the sale, and provide as to the manner of fulfilling the warranty or the measure of damages for its breach." See 37 Tex. Jur. p. 266, Sec. 111 and authorities there cited; 46 Am.Jur. p. 496, Sec. 313. But an implied warranty is a representation or promise on the part of a seller as to the quality or suitability of the property sold which "the law implies, infers or presumes and imports into the contract, in view of all the facts and circumstances attending the transaction, including the nature of the property, the terms of the agreement, and trade usages. A warranty of this character is an exception to the doctrine of caveat emptor, allowed in certain cases where no verbal warranty is established and there is no written warranty," etc. 37 Tex.Jur. p. 281, Sec. 121 and authorities. See also: 46 Am.Jur. p. 513, Sec. 332.

■■ The issues which the trial court submitted to the jury were manifestly designed for the purpose and with the intention of permitting the jury to determine whether there was a warranty on the part of appellee that the poults to be furnished to appellant in pursuance of the contractual relations between the parties would be free from disease and, if so, as to whether appellee breached such warranty and the damages, if any, resulting from the breach. In our opinion the evidence in the case was sufficient to raise the substance of the issues which the court submitted and the findings of the jury on such issues established or tended to establish appellant's plea that the consideration for the execution of the contracts sued upon had partially failed. Whether or not an implied warranty exists in a given case is usually a question of fact to be determined by a jury from all the facts and circumstances in evidence. Davis v. Ferguson Seed Farms, Tex.Civ. App., 255 S.W. 655; Turner & Clayton, Inc. v. Shackelford, Tex.Com.App., 288 S.W. 815. Therefore, we hold that the court below erred in granting appellee's motion for judgment non obstante veredicto and in rendering judgment for it in the amount for which it sued.

■ Although appellee made numerous objections to the manner and form in which the court submitted appellant's defensive issues to the jury, it has not filed any cross assignment of error or attempted in its brief to point out any error committed against it in the trial court which would have prevented an affirmance of the judgment had one been entered by the trial court on the verdict. Consequently,

since the court below erred in granting appellee's motion for judgment non obstante veredicto, it becomes our duty to reverse the trial court's judgment and render judgment in harmony with the verdict. Rule 324, Texas Rules of Civil Procedure; Le Master v. Fort Worth Transit Co., 138 Tex. 512, 160 S.W.2d 224; International Printing Pressmen and Assistants' Union of North America v. Smith, 145 Tex. 399, 198 S.W.2d 729; City of Houston v. Lurie, 148 Tex. 391, 224 S.W.2d 871, 14 A.L.R.2d 61; Sanders v. Harder, 148 Tex. 593, 227 S.W.2d 206.

Accordingly, the judgment appealed from is reversed and judgment is here rendered that appellee take nothing by reason of its suit against appellant.

LESTER, C. J., took no part in the consideration or disposition of this case.