Etta WEST et al., Appellants,

v.

CITY OF BORGER, Appellee.

No. 6734.

Court of Civil Appeals of Texas.

Amarillo.

Jan. 20, 1958.

Monning & Monning, Amarillo, for appellants.

Jack Hood, Borger, for appellee.

CHAPMAN, Justice.

The City of Borger originated this suit in the trial court seeking a mandatory order requiring appellants to tear down and demolish a two-story frame building, or in the alternative enjoining appellants from interfering with the city's action in demolishing same. The structure was alleged to be a fire hazard and that under the city's 1954 Ordinance giving the fire marshal authority to require demolition such authority had been exercised but that appellants had refused demolition, had appealed to the City Commission of the City of Borger and said commission had affirmed the fire marshal's order. The case was submitted to the jury on whether the building constituted a fire hazard and whether it could not be repaired so as to no longer constitute a fire hazard without undertaking repairs amounting to a substantial reconstruction. The jury answered both issues favorably to the City and the court rendered judgment enjoining further use and occupancy not later than 90 days after final judgment, rendered judgment requiring the premises to be vacated and giving the City the authority to completely demolish the building in the event the appellant should fail so to do. From this judgment appellants have perfected their appeal to this court upon four points of error but from our view of the case it will be unnecessary to discuss all points assigned. Point one asserts:

"The uncontroverted evidence showing that the building could be repaired for approximately one-fourth of its cost, the court erred in refusing to instruct a verdict for defendants."

Subsequent to the construction of the building the City of Borger, then a booming oil field town, in 1927, adopted its first ordinance relating to construction and repair of buildings in the fire zone. The property in controversy was within the area fixed by the fire limits and the 1927 Ordinance provided, in part as follows:

"Article 6. Frame buildings not damaged to the extent of 50 per cent of the value of a similar new building may be repaired or altered, provided that the height or superficial area is not altered, or the occupancy is not changed."

In 1954 the City of Borger adopted an ordinance creating the office of fire marshal and defining his duties. In 1955 the City adopted another ordinance governing the construction, alteration, equipment or removal of buildings or structures. This ordinance repealed other prior ordinances in conflict therewith but provided it should not be construed as affecting any right or remedy existing at the time.

In 1953 a fire occurred on the premises abutting appellants' property and the build-

ing in controversy sustained minor damage, which the evidence showed to be from one to ten per cent. Despite the fact that the City stopped appellants from time to time in their efforts to repair the building the record shows the side next to the fire had received a new foundation plate and complete new studdings along the entire side of the building where old ones had been damaged by fire. This is material to the consideration of this case only because the trial court tried it on the theory of its condition at the time of the trial.

The southwest side of the building is occupied by a barber shop and that area has a concrete floor. All witnesses admitted that area of the building is satisfactory. Part of the building used for storage has a dirt floor, though there is no assertion such construction was not lawful at the time it was built nor that a dirt floor contributed to a fire hazard.

Appellants' witnesses testified that by putting a brick veneer or permastone front, a concrete floor on the north side, a stuccoed north wall, twelve window units on the wall next to where the fire had occurred, 4,500 feet of new sheetrock, a plate glass window and a new door at the front, $320 worth of new flooring, some braces in the center and certain other minor repairs the building would be a good substantial structure, less a fire hazard than it was when originally constructed and would be as attractive as most of the buildings in Borger. There is also testimony in the record that the dimensional lumber in the building is better than can now be bought new. One of appellee's witnesses testified the building needed more electric circuits and should be wired in conduit though he admitted many of the buildings in Borger were not so wired. Appellee's civil engineer witness, John W. Wise, the Director of Public Safety for the City indicated in his testimony he considered the building should be demolished, yet he admitted he could not say the area where the barber shop was

located was unsafe or that it should be torn down. He also testified that the other area of the downstairs part of the building could be fixed in the same manner as the barber shop which he had testified:

"Q. Well, I am asking you now. Will you tell the jury now that you think that that barber shop is unsafe, and should be torn down, torn out? A. No, sir."

Had the building been condemned immediately following the fire and before any repairs the city would have been in a much better position in seeking to justify submission of the second issue, because it is unquestioned that many new timbers were added during the period between the fire and the trial that materially strengthened the structure. We have very carefully studied the facts of this case and are forced to the conclusion that the repairs the testimony shows were needed as of the day of the trial were not such as to amount to a substantial reconstruction and that the trial court was in error in refusing appellant's motion for instructed verdict. The uncontradicted testimony shows the repairs needed could be made for approximately $3,800 while complete reconstruction would cost approximately $17,000. We are in complete sympathy with the city of Borger in their efforts to improve the quality of the buildings within their fire zone but we believe any court should take a long look at any procedure that deprives a person of his property without compensation.

In City of Houston v. Lurie, 148 Tex. 391, 224 S.W.2d 871, 879, 14 A.L.R.2d 61, the court quoted with approval from another authority saying:

"Since it is clear that the owners of a building lawfully erected have a vested property right in the building, it necessarily follows that they have the right to repair so as to keep it fit for use. To deny this is to deny the enjoyment of the property right itself."

The court then continues in its own language to say:

"The quoted rule is an application of the principle that, while the right exists in the exercise of the police power to destroy property which is a menace to public safety or health, public necessity is the limit of the right and the property cannot be destroyed if the conditions which make it a menace can be abated in any other recognized way."

In the Lurie case involving a two story building and a three story building, the record showed the outside exits of the buildings were inadequate, the hallways narrow and poorly lighted, the tenement rooms small, crowded and without proper exits, the electric wiring hazardous and unsafe, the flues cracked, the stairs and porches on the second floor badly rotted, the partitions were made of single boards, many pasteboard, kerosene was used for heating and lighting and was stored in open bottles and cans, and that fifty adults and fifteen children were living in the buildings. Under this state of the record the Supreme Court held the two story building could be repaired so as to no longer constitute a serious fire hazard without substantial reconstruction.

The burden of proof was upon the city to establish by a preponderance of the evidence that the building, in its condition at the time of the trial could not be repaired so as to no longer constitute a serious fire hazard without undertaking repairs amounting to a substantial reconstruction of the building. We do not believe that burden was successfully discharged.

We do hold the city discharged the burden required of it to prove the building, in its condition at the time of the trial, constituted a serious fire hazard. Accordingly, the judgment of the trial court is reversed and rendered but without prejudice to the right of the city to proceed under its ordinances to require measures to be taken to remove dangerous conditions and to render the building safe. Costs are adjudged against appellee.