**CITY OF HOUSTON, Appellant,**

v.

**Frank SCHLUETER et al., Appellees.**

No. 13598.

Court of Civil Appeals of Texas.

Houston.

Nov. 17, 1960.

Rehearing Denied Dec. 8, 1960.

---

R. H. Burks, City Atty., Charles A. Easterling, Senior Asst. City Atty., Houston, for appellant.

Stein, Bennett & Shepley, Ralph O. Shepley, Houston, for appellees.

WERLEIN, Justice.

This suit was brought by appellant to enforce the terms of Ordinance No. 57–1481 passed by the City Council of the City of Houston requiring appellees to demolish certain portions of the building belonging to appellee Schlueter located at 3617 South Main Street in Houston, and thereafter to rewire the entire electrical system of the remaining portion of the building, so as to eliminate conditions existing which allegedly constitute a fire hazard. This appeal is taken from the judgment of the court instructing a verdict for appellees at the conclusion of appellant's case.

The ordinance declares the building to be a public nuisance in that it is a serious fire hazard to life and property, in its present condition, "which said condition can be corrected." Said ordinance was enacted pursuant to Ordinance No. 791 which provides in substance that a Fire Hazard Inspection Committee is created consisting of the Director of Public Works, the Chief of the Fire Department and the Fire Marshal of the City. Whenever the City Council receives information that any building is a serious hazard to life and property and directs the Committee to investigate the building, it is the duty of the Committee to do so and after notice to the owner to hold a hearing and then make full report with recommendations to the Council. The report is considered by the Council at its first regular or special meeting, the owner being given the right to be heard and present witnesses. The Council, after hearing the report and the witnesses, makes its conclusions as to what action shall be taken. If the Council finds that the building is a serious fire hazard to life and property but that measures can be taken to remove the dangerous conditions and render the building safe, it specifies the measures and orders the property owner to correct the condition in accordance with its directions. If the Council finds that the conditions rendering the building a serious fire hazard cannot be corrected, it declares the building to be a nuisance and orders its demolition. The ordinance provides that if the owner fails to comply with the order of the City Council within the time specified the City Attorney shall file suit in the proper court against such owner and obtain the necessary orders and process of said court to enforce the orders of the City Council.

Without pleading specifically the facts relied upon tending to make the building in question a fire hazard and nuisance, appellant merely alleges that the recitals and allegations of fact contained in Ordinance No. 57–1481 are true, and it undertakes to incorporate the same as allegations of fact in the petition. This manner of pleading has made it necessary to ferret out from various statements the allegations presumably relied upon by appellant to establish that the building in question constitutes a fire hazard. We shall, however, consider the pleading as alleging by such incorporation some facts tending to show that the building in its present condition is a fire hazard.

The front or main section of the building in question, known as 3617 Main Street, faces approximately 36 feet west on Main Street, in the City of Houston, and extends back for depth 70 feet. It has a gable roof, the gable facing Main Street. Originally it consisted of a structurally sound 2-story brick veneer building with an attic and

dormer windows in the sloping portion of the roof. The rear section of the building, designated herein "annex", which abuts the main building on the east, consists of a 3-story structure with masonry walls. The attic of the main building is used as a third floor dwelling by the owner and tenants. The second floor of such building is used as a hotel for men. The first floor is occupied by an antique shop. On the roof of the main building, towards the rear part thereof and extending over part of the roof of the annex, is a penthouse referred to herein as the "fourth floor." It is unsightly in appearance, has several different floor levels, and according to one witness it was built without plan or design. It is used for human habitation. The northwestern portion of such fourth floor or penthouse is supported by a dormer window, the roof of the main building, and little 2 x 4's that come down into the existing roof and which are rotted out in the roof line.

There is evidence that it would be necessary to enclose one of the stairways in order to insure safety in case of fire; that it would cost $6,000 to make the third and fourth floors structurally sound; that the wooden joists on the third floor in the annex are rotten; that some of the electricity cords are frayed and worn, increasing the danger of fire; that the electrical system in the building is dangerous and could cause a spark or fire; that the entire penthouse or fourth floor is fed from a lamp extension cord which creates a bad condition; that the third floor apartments are fed through extension cords just large enough to feed a table lamp and not large enough to take care of such apartments; that the electric circuits are dangerous and constitute a definite fire hazard; that in order to eliminate the fire hazard it would require at least 90% rewiring of the building; that the fuses used in the building are too heavy and the circuits too light, resulting in a dangerous situation; and that some naked wires have been stuck into electrical sockets or receptacles. The Electrical Inspector testified that in some instances the wire insulation of some of the extension cords is charred and brittle and that the wires in the building constitute a definite hazard. He concluded, however, that repairs could be made to cure all of the conditions creating the fire hazard.

The Fire Marshal of the City of Houston testified as to the spray painting and refinishing of furniture in the antique shop and the storage of paint thinner and other flammable material in the building and under the stairways and on the wooden landings. He also testified that the steps and the stairways were not completely enclosed and would cause a draft like a flue; that there are not proper exits from the building; that it was extremely hazardous to live in the attic of the 2-story building since heat and smoke rise and exhaust the oxygen; that some tenants in the third floor could not get to the fire escape without going through the owner's apartment; and that the building, in its present condition, constitutes a hazard to life and property.

■ We think there is some evidence of probative force that the building in its present condition constitutes a fire hazard. In determining whether there is such evidence, we must view the evidence in the light most favorable to appellant, disregarding all evidence and inferences therefrom favorable to appellee. Ford v. Panhandle & Santa Fe Ry. Co., 151 Tex. 538, 252 S.W.2d 561; Cartwright v. Canode, 106 Tex. 502, 171 S.W. 696.

■ Appellant's action is predicated upon the contention that the building is a fire hazard. The city has alleged the steps taken by the city officials and the ordinance passed and relied upon and appellees' failure to comply therewith. The question as to whether the building is a fire hazard and nuisance is a judicial one. The substantial evidence rule does not apply. City of Houston v. Lurie, 1949, 148 Tex. 391, 224 S.W.2d 871, 877, 14 A.L.R.2d 61. The ordinance appellant seeks to enforce by mandatory injunction orders appellee Schlueter and his lessee Seghers to:

"* * * vacate the third and fourth floors of the building located at 3617 Main Street of all human occupancy immediately in its present use, being all of the building extending beyond seventy (70) feet from the front of the building measured along the northerly wall of the building and including the third and fourth floors of rear portion of the building, which has been constructed on top of the building in its attic and within the seventy (70) feet of the western portion of the building as it faces Main Street, and after the building has been vacated, as to its upper third and fourth floors of all human occupancy to demolish and remove all of said building and structure beyond seventy (70) feet from the front of the building measured along the northerly wall of the building and the third and fourth floors of the building which is projected toward the front of the building, as it faces on Main Street, and which has been constructed within the seventy (70) feet of the building heretofore described; or in lieu of the demolishing of the building as described herein that the third and fourth floors be sealed off effectively so that it will be impossible for use by human occupancy.

"After the completion of the demolition, or repairs, as ordered above, the entire electrical system of the remaining portion of the building be so repaired as to meet the requirements of the Electrical Code of the City of Houston as evidenced by an inspection by the Electrical Inspector of the City of Houston."

The question is whether upon a favorable finding that the building constituted a fire hazard, the city would be entitled to have all of the building, including the abutting rear annex, except the first two floors of the main section of the building, demolished, or the third and fourth floors thereof sealed off, thereby depriving appellee of the use thereof. In City of Houston v. Lurie,

supra, which involved the same base or enabling ordinance relied upon in this case, the Court said:

"The ordinance requires the City Council, if it concludes that a building is a serious fire hazard but that measures can be taken to remove the dangerous conditions and render the building safe, to specify the measures and order the owner to take them, and to declare the building a nuisance and order it demolished only when it concludes that the conditions rendering the building a serious fire hazard cannot be corrected by any measures."

The Court also stated:

"In view of the jury's finding, supported by evidence, and the rule announced in the Crossman case, the trial court's judgment ordering the demolition of the two story building is erroneous. The rule is, 'The building having been lawfully erected before its locality was included within the fire limits, it could not, merely because of wooden construction be condemned as a nuisance, nor could the right of repair be denied unless the repair should amount to a substantial reconstruction of the building. * * *

"'Since it is clear that the owners of a building lawfully erected have a vested property right in the building, it necessarily follows that they have the right to repair the building so as to keep it fit for use. To deny this is to deny the enjoyment of the property right itself.' Crossman v. City of Galveston, 112 Tex. 303, 311, 247 S.W. 810, 26 A.L.R. 1210."

In the instant case the City Council concluded that the building, presumably the entire building including the rear annex, is a serious fire hazard but that such condition could be corrected. Nevertheless, instead of specifying in detail what measures should be taken to render the building safe and eliminate the fire hazard, it pro-

ceeded to declare the building a public nuisance and to order a large portion of it demolished. The main building and annex were lawfully erected before the locality was included within Fire Zone No. 2. Such buildings cannot, merely because of wooden or brick veneer construction or because structurally unsound, be ordered demolished as a fire hazard if they can be repaired so as to keep them safe and fit for use. Any order requiring the demolition of the building as a fire hazard would be in the very teeth of the Council's finding that the condition can be corrected.

There are not in this case two distinct and separate buildings as there were in the Lurie case, although the rear section of the building or annex which abuts the main building is practically a distinct entity built at a different time from the main building and with a separation of as much as 2 to 2½ inches at one point between its west wall and the main building. The ordinance in question requires that the entire rear annex be completely demolished. No provision whatever is made for repairing the same, although appellant's witness Moore testified that it could be repaired by constructing a new roof and a new south wall, and replacing all wooden stairs outside the existing building. We find no evidence in the record that would justify or warrant either the Council or the Court ordering the complete demolition of such annex. There is no evidence that the annex constitutes a fire hazard that cannot be corrected.

■ Witness Moore also testified that the fourth floor or penthouse later constructed on top of the roof of the main building and rear annex, and rather dangerously perched thereon with no ties to hold it down to the roof and with part thereof supported by little upright 2 x 4's rotted out at the roof line, would have to be taken off to make the building structurally sound from a fire hazard standpoint. He further testified there is no way to repair it without demolishing it and beginning all over. If

the building in its present condition is a fire hazard which can be corrected, the Council under the terms of the enabling ordinance must specify the measures necessary to remove the dangerous conditions and eliminate the fire hazard, and order that the owner correct the conditions in accordance with the Council's directions. If it is found that in order to eliminate the conditions and make the building safe, the penthouse as an excrescence upon the building, even as a tumor on the human body, must be removed and that nothing short of removal will suffice to cure the condition and eliminate the fire hazard, the Council and Court might specify such drastic action as a corrective measure.

In the case of Newton v. Town of Highland Park, Tex.Civ.App., 282 S.W.2d 266, writ ref., n.r.e., the court held in a case somewhat similar to this one, that where the appellees pled and introduced evidence that certain of the structures on the premises constituted nuisances and fire hazards and should be razed and removed, each of the structures presented an ultimate, independent and determinative fact issue as to nuisance and also as to fire hazard. The court affirmed the mandatory injunction granted by the trial court which required the razing and removal of certain structures found to be fire hazards. Under this authority, if the penthouse is found to be in itself as a separate structure or addition a serious fire hazard that cannot be corrected, the Council could declare it a nuisance and order it demolished.

The ordinance appellant seeks to enforce, however, orders that both the third and fourth floors be demolished or effectively sealed off from human occupancy. If such ordinance is literally enforced, it will be necessary for appellee not only to demolish the entire annex, although there is no evidence that it in itself constitutes a fire hazard, but also to demolish the entire third and fourth floors, thus leaving the structurally sound main building with two floors and without an attic or roof.

Appellant states in its brief that this suit has not been brought to demolish the building but to repair it. If this is true, and if it was the intention of the Council to give the owner of the building the right to repair it, the ordinance should have specified definitely and in detail the repairs necessary to eliminate the fire hazard. This the ordinance does not do. It does not specify the repairs that should be made to the annex, in keeping with the evidence, as, for instance, the construction of a new floor, south wall and stairway, or the measures that should be taken to make the third floor safe, as, for instance, the removal of certain designated electric wire extension cords, drop cords, electric wires and sockets. It does provide that in lieu of demolishing the building as described in the ordinance, the third and fourth floors might be sealed off effectively so that it will be impossible for use by human occupancy. This sealing off would be the equivalent of demolishing both floors and would not correct the fire hazard resulting from the improper wiring thereof.

The ordinance also provides that after the completion of the demolition or repairs (no repairs being specified), the entire electrical system of the remaining portion of the building (not the demolished or sealed off third and fourth floors or demolished annex) be so rewired as to meet the requirements of the Electrical Code of the City of Houston as evidenced by an inspection by the Electrical Inspector of the city. It does not specify with any degree of definiteness the repairs that must be made to the electrical system to eliminate the fire hazard, nor does it give appellee the opportunity to make specified repairs that would render the building safe. It conditions the rewiring upon prior demolition of the annex and the third and fourth floors, and orders appellee to comply with unspecified requirements of the Electrical Code and Electrical Inspector. The provisions and requirements of the ordinance in question not only fail to conform to the base or enabling ordinance, but they are in large part without support in the evidence and too vague and indefinite for enforcement.

Under the facts of this case, appellee has the right to repair the building and thereby eliminate the fire hazard since the condition can be corrected provided the repairs will not amount to a substantial reconstruction of the building. Appellee's property cannot be destroyed if the conditions which make it a menace can be abated in any other way. West v. City of Borger, Tex.Civ.App., 309 S.W.2d 250; City of Houston v. Lurie, supra; Crossman v. City of Galveston, supra. We find no evidence of probative force in the record which warrants demolition of the attic or third floor of the main building or sealing it off so effectively that it can not be used for human occupancy, thereby depriving the owner of its use, not only as a dwelling, but also for other lawful purposes. Indeed, as the ordinance is worded, it may well be construed as requiring that the attic be so effectively sealed that the owner could not go into it to repair some defective or dangerous condition that might exist or later develop.

In its wording and requirements, the ordinance in question is entire, each part being essential and connected with and inseverable from the rest, so that the nonconformity of one essential part thereof with the enabling ordinance renders the whole ordinance invalid or in any event unenforceable. Sam's Loan Office v. City of Beaumont, Tex.Com.App.1932, 49 S.W. 2d 1089. Appellee is confronted with the ordinance and directed to obey its mandates, not in part but in whole, even though the Council's orders and requirements are in violation of the provisions of Ordinance No. 791. The mandate to demolish the annex without giving appellee any opportunity to repair the same does not conform to the enabling ordinance, since the undisputed evidence shows that such annex can be repaired. The same thing is true with respect to the order of the Council requiring

appellee to demolish the third floor of the building or effectively seal it off. There is no evidence that would sustain a finding that such structures cannot be repaired without substantial reconstruction thereof or that the demolition of such structures is necessary to eliminate the existing fire hazard.

We have concluded that the Trial Court did not err in granting an instructed verdict in favor of appellees. Our judgment in affirming the action of the Trial Court is, however, without prejudice to the right of appellant to proceed under its enabling ordinance and by action of the City Council to require definite and specific measures be taken to remove dangerous conditions rendering the building a serious fire hazard and, if necessary, to institute suit to enforce the orders that may be made by the City Council in conformity with the provisions of such enabling ordinance.

Affirmed.