TEXAS REAL ESTATE COMMISSION,
Appellant,

v.

Leona HOWARD, Appellee.

No. 16687.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

May 6, 1976.

Rehearing Denied June 3, 1976.

John L. Hill, Atty. Gen. of Texas, Robert J. Provan, Asst. Atty. Gen., Austin, for appellant.

Hoover, Cox & Miller, Parx F. Shearer, Houston, for appellee.

COLEMAN, Justice.

This is an appeal from the judgment of the district court which set side the Commission's order revoking the Texas Real Estate Brokers' License of Leona Howard.

Section 18, Article 6573a, Vernon's Annotated Civil Statutes (the Real Estate License Act) provides:

"The Commission shall before suspending or revoking any license, notify the licensee in writing of any charges made in order to afford such licensee an opportunity to be heard, which notification shall be given at least ten (10) days prior to the date set for hearing. The Commission shall prescribe the time and place of the hearing. The Commission shall have no authority to promulgate rules or regulations which are not definitely set forth in this Act. Such written notice may be served by mailing same by registered mail to the last known business address of such licensee . . ."

Section 21, supra, provides:

"(a) Any real estate broker, or real estate salesman, or any person having a justiciable interest, who is aggrieved by any decision of the Commission may file within thirty (30) days thereafter in the District Court of the county in which he resides, or in the District Court in the county where his principal place of business is situated, a petition against the Commission officially as defendant, alleging therein in brief detail the action and decision complained of and for an order directing the Commission to license or reinstate the applicant. The case shall be tried in accordance with the Texas Rules of Civil Procedure."

Section 13 of the Real Estate License Act requires a real estate broker to specify the address of his place of business in his application for a license, and further that such address be designated in the license. It further requires that upon change of address of the place of business the real estate broker shall return his license and that a new license showing the correct address be issued to the broker for display in the new office.

An administrative agency, though vested with discretion in its acts, must not exercise its powers arbitrarily or capriciously, and the reasonableness of its orders is subject to judicial review. The extent of such a review has been rather generally held to be limited to an ascertainment of whether there was substantial evidence reasonably sufficient to support the challenged order. Even where a statute provides for a trial de novo, this term, as applied to reviews of administrative orders, has come to have a well defined significance in the decisions of this State, and as a rule has been taken to mean a trial to determine only the issues of whether the agency's ruling is free of the taint of any illegality and is reasonably supported by substantial evidence. *Fire Department of City of Fort Worth v. City of Fort Worth*, 147 Tex. 505, 217 S.W.2d 664 (1949).

In a case involving the order of a county judge denying an application for a license

to sell beer the Supreme Court considered a statute authorizing an appeal to the district court and providing "The trial shall be de novo under the same rules as ordinary civil suits." The court, in *Jones v. Marsh*, 148 Tex. 362, 224 S.W.2d 198 (1949), stated:

". . . The statute does not expressly provide that there shall be in district court a full retrial of the facts as if there had been no findings made by the county judge, nor does the statute specify what issue or issues shall be tried in the district court. It may, therefore, reasonably be concluded, in view of the subject matter involved and the nature of the order to be reviewed, that only a limited review is intended, and that insofar as the facts which are the basis for the order of the county judge are concerned the question or issue to be determined in the district court is whether or not the findings of the county judge are reasonably supported by substantial evidence. Such a trial is one kind of a trial de novo, and the somewhat limited trial can be held, as the statute requires, under the rules applicable to ordinary civil suits."

■ Since we are not here dealing with a statute requiring a trial de novo, we are not concerned with the question of whether the Commission in making its order was exercising a judicial function rather than a legislative function. The Commission was carrying out an administrative duty in the manner authorized by the legislature. The substantial evidence rule properly was applied by the trial court. *Southern Canal Co. v. State Board of Water Engineers*, 159 Tex. 227, 318 S.W.2d 619 (1958); *Railroad Commission v. Metro Bus Lines*, 144 Tex. 420, 191 S.W.2d 10 (1945).

■ As the court pointed out in *Wilson v. Board of Education of Fort Worth Ind. School Dist.*, 511 S.W.2d 551 (Tex.Civ.App. —Fort Worth 1974, writ ref'd n. r. e.), in addition to determining whether or not the order of the Commission is reasonably supported by substantial evidence, we must determine whether or not the agency's ruling is free of the taint of any illegality. Mrs. Howard asserts that she was denied procedural due process in that she was not afforded notice of the time and place of the hearing and therefore had no opportunity to be heard before the Commission revoked her license. On this issue the trial court is authorized to make findings of fact in accordance with the preponderance of the evidence. The evidence establishes that a proper notice was prepared and mailed to Mrs. Howard by registered mail to her last known business address as authorized by Section 18, Article 6573a, V.A.C.S. The letter mailed to Mrs. Howard, together with the return receipt is in evidence. This letter was returned to the Commission unopened with the following notations: "Notified No Response 3–6–71"; "Final Notice 3–11 3–18"; and "Return to Sender Reason Unclaimed." There is testimony that the address shown on the letter was that of the offices occupied by Mrs. Howard at that time. Subsequently a letter directed to Mrs. Howard at the same address notifying her of the fact that her license had been cancelled was delivered to her.

A similar question was presented in *Ford v. Genereux*, 104 Colo. 17, 87 P.2d 749 (1939). There it was argued that a tax deed was void because a delinquent taxpayer was not legally notified of the proposed issuance of the tax deed as required by a statute providing that "The county treasurer shall serve or cause to be served by personal service or by registered mail, a . . . notice . . . not more than five months, and at least three months before the time of the issuance of such deed." The evidence disclosed that the treasurer mailed a registered letter containing the statutory notice more than three months before the date of the issuance of the tax deed. The letter was properly addressed. The letter was delivered to the taxpayer less than three months before the issuance of the deed. The court held that service was complete when the treasurer registered and deposited in the United States Mail the statutory notice directed to the proper post-office address of the party to be notified. The court reasoned:

". . . Any other construction would impose unwarranted continuances

with respect to the issuance of tax deeds in that if the date of the issuance of the deed is to be controlled by the dates of the receipt of the registered mail notice by the various interested parties, the treasurer would be unable with certainty to specify in the notice, when transmitted, the day upon which the deed would issue as is required by section 255, supra. It would also make it possible for an interested party to indefinitely defer the issuance of the deed by failure or refusal to accept the registered mail notice. Where service of notice by registered mail is expressly authorized by statute, as is the situation here, it has generally been held that service is effected when the notice is properly addressed, registered and mailed   .   .   ."

*Ford v. Genereux,* supra, was cited with approval by the Supreme Court of Idaho in *Wasden v. Foell,* 63 Idaho 83, 117 P.2d 465 (1941). In *Ross v. Hawkeye Ins. Co.,* 93 Iowa 222, 61 N.W. 852 (1895), the court dealt with the statute providing that insurance policies shall not be declared forfeited or suspended for non-payment of premium until after thirty days' notice is given. The statute provided that such notice may be served by registered letter, addressed to the assured at his postoffice address named in or on said policy. The court held that service of such a notice is completed when the letter is properly addressed and registered at the postoffice.

In an action brought under the Employers Liability Act of New York, the Court of Appeals of New York in *Hurley v. Olcott,* 198 N.Y. 132, 91 N.E. 270 (1910), considered a statute providing that notice may be served by post by letter addressed to the person on whom it is to be served at his last known place of residence or place of business and if served by post shall be deemed to have been served at the time when the letter containing the same would be delivered in the ordinary course of the post. The court stated:

"   .   .   . This provision is not anomalous. In many cases the statute provides that notice may be served by mail. Such as the provision as to service of papers on the attorneys in an action, and it has been uniformly held that the service was effective when the papers were properly mailed, regardless of their receipt by the adverse party. The risk of miscarriage is with the party to whom they are directed .   .   . The law may prescribe other than personal service even of original process by which it is sought to bring a party into court and bind him by its judgment."

The court pointed out that personal service is not required to constitute due process of law, and that the legislature may prescribe a kind of notice by which it is reasonably probable that the party proceeded against would be apprised of what is going on against him, such as by advertisement in a newspaper.

No Texas cases directly in point have been found. In *Rosenthal Executive Car Leasing Co. of Houston,* 435 S.W.2d 168 (Tex.Civ.App.—Houston [1st Dist.] 1968, no writ history), this court considered a contract which contained a provision requiring the lessor of an automobile to notify lessee of the amount of an appraisal of the leased automobile after it had been returned to the lessor which notice would constitute an offer by the lessor to sell the leased vehicle at the appraised price. The lease stated that the notification could be by mailing such notice to lessee at the address stated in the lease, "or by any other method deemed by lessor to give actual notice to lessee." In that case it was contemplated that actual notice be given. The facts established that the proper amount of postage was not affixed to the letter. Under the evidence in that case the court properly held that the lessee of the automobile had not been given notice required by the contract. The Texas courts agree that the date of notice when given by registered mail is controlled by the mailing date rather than the date on which the letter was received. *Buckner v. Anderson-Dunham, Inc.,* 482 S.W.2d 350 (Tex.Civ. App.—Eastland, 1972, writ ref'd n. r. e.); *Johnson Service Co. v. Climate Control Con-*

*tractors,* 478 S.W.2d 643 (Tex.Civ.App.— Austin, 1972, no writ history).

■ Where service of notice by registered mail is expressly authorized by statute, service is effected when the notice is properly stamped, addressed, registered and mailed. Mrs. Howard had proper legal notice of the time and place of the Commission's hearing.

■ The standard by which the order of the Commission under attack must be reviewed was clearly set out in *Jones v. Marsh,* 148 Tex. 362, 224 S.W.2d 198 (1949), in these words:

"Stating again the substantial evidence rule, it is that the finding of the administrative body or agency will be sustained by the court if it is reasonably supported by substantial evidence, meaning evidence introduced in court. It is for the court, whether trial or appellate, to determine as a matter of law the reasonableness of the support afforded by substantial evidence, and in making its decision of this question the court examines and takes into consideration all of the evidence . . ."

■ The burden of proving that the order of the Commission revoking her broker's license was invalid is that of Mrs. Howard. *Isbell v. Brown,* 196 S.W.2d 691 (Tex.Civ.App.—San Antonio 1946, writ ref'd). The Commission urges that Mrs. Howard failed to sustain her burden because she did not offer the findings and order of the Commission into evidence. Under the peculiar circumstances of this case, we will not sustain this contention. The appellant, Texas Real Estate Commission, asserts in its brief that the instant appeal is from a judgment of the trial court setting aside the order of the Texas Real Estate Commission whereby the Texas Real Estate Broker's License issued to Leona Howard was revoked. There is in the record a copy of the notice mailed to Mrs. Howard advising her that a hearing had been called to receive evidence in connection with certain specific charges set out in the notice.

The grounds on which a real estate broker's license may be cancelled are set out in the Real Estate License Act. The notice charged that Mrs. Howard had violated Section 16(c)(5) of said Act which provides:

"Failing within a reasonable time to account for or remit moneys coming into his possession which belong to others, or commingling of money belonging to others with his own funds; . . ."

She was also charged with violating Section 16(c)(22) of the Real Estate License Act reading:

"Conduct which constitutes dishonest dealings, bad faith, untrustworthiness or incompetency; . . ."

It was alleged that Mrs. Howard failed to return $100.00 earnest money which she had received from Mr. Albert J. Lastrapes in connection with an earnest money contract between Albert J. Lastrapes and Robert Brower and wife, which contract had been negotiated through the Leona Howard Agency. Mr. Lastrapes testified that he approached Mrs. Howard with reference to the purchase of a house and, during their negotiations they discussed the monthly payments which he would be required to make. He stated that he didn't want a house if the payments on the note would be in excess of $150.00 and that Mrs. Howard told him the payments would be about $134.00 or under $140.00. He told her that he could not afford payments over $150.00. Mrs. Howard assured him that the payments would be around $134.00. There was no written contract with regard to the amount of the payments but there was a verbal agreement between Mr. and Mrs. Lastrapes and Mrs. Howard. He testified that he didn't think that the restriction on the amount of the payments was a part of the earnest money agreement which he signed with the owner and that he just relied on Mrs. Howard in that regard. Mrs. Howard drew up the contract and he signed it and at that time gave her $100.00 as earnest money. He was given a copy of the earnest money contract. When he learned that the payments on the loan would be $154.00 per month he decided not to go

through with the purchase. He then demanded the return of the $100.00 earnest money deposit and Mrs. Howard refused to return it to him.

Mr. Lastrapes also testified that Mrs. Howard told him that if he would complete the purchase she would reimburse him the $100.00 earnest money and give him the money for the downpayment. He supposed that she anticipated that he would not pay the note and that the house would be repossessed. He told her that it appeared to him that that would hurt his credit and he wouldn't be able to buy another house; that he would have to check into it. He then called someone at the F.H.A. who told him that it would affect his credit and that it was illegal. He testified that he contacted Mrs. Howard and told her about this and that she got very upset. He admitted that he was negotiating with another agent for the purchase of a house at the same time, and that he thereafter purchased the house and that the monthly payment on the house which he purchased was $154.00.

Mrs. Howard, as broker, negotiated the sale of the Brower house to Lastrapes and drew up the earnest money agreement. She testified that she received the $100.00 earnest money, and that she subsequently paid it to the Browers. She testified that she discussed the amount of the monthly payments with Mr. Lastrapes. She figured the principal and interest payments on the amount of the loan and added to that the proper amount for taxes and insurance based on the amount paid by Mrs. Brower and gave him the resulting figure as the approximate monthly payment. She testified that she did not put the monthly payment in the earnest money contract because she never did that. She testified that she had had a real estate broker's license for approximately twenty years and that she devoted her full time to that occupation. She testified that she had no agreement with Mr. Lastrapes that she would "put a limit on the amount of the payment"; that he did not ask her to put it in the contract; and that she did not remember whether Mr. or Mrs. Lastrapes told her the amount of payment that they could afford. She answered "no" to the question: "Did you have any kind of deal with Mr. Lastrapes to close the deal and you would either pay him or take the property off his hands?" She further stated that she did not indicate to Mr. Lastrapes that if he would close the transaction she would buy the house from him. She further testified that she made no agreement with Mr. Lastrapes to refund him any money after the closing.

The purchase money agreement contained a provision that "if the purchaser fails to consummate the agreement for any reason other than title defects, the seller should have the right to said earnest money as liquidated damages and shall pay to the undersigned agent therefrom one-half of said cash deposit."

In *Gulf Land Co. v. Atlantic Refining Co.*, 134 Tex. 59, 131 S.W.2d 73 (1939), the Supreme Court was faced with an appeal from an order of the Railroad Commission. In the course of the opinion (page 84) the court stated:

". . . It is also the rule that an appellate court will sustain the judgment of a trial court if it is correct on any theory of the law applicable to the case, and that regardless of whether the trial court gives the correct legal reason for the judgment he enters, or whether he gives any reason at all . . . We think the above rule should apply with double emphasis to cases of this kind where the Commission must make fact findings in the first instance. In the case at bar, if the Commission had merely made a general finding of fact, or if it had made no express finding of fact at all, we could and would presume all controverted fact issues as found in favor of the order entered . . ."

In another appeal from an order of the Railroad Commission in an oil and gas matter the Supreme Court dealt with the meaning of the phrase "reasonably supported by substantial evidence." In *Railroad Commission v. Shell Oil Co.*, 139 Tex. 66, 161 S.W.2d 1022 (1942), beginning on page 1029 the court stated:

". . . . In such a case the issue is not whether or not the agency came to the proper fact conclusion on the basis of conflicting evidence, but whether or not it acted arbitrarily and without regard to the facts. Hence it is generally recognized that where the order of the agency under attack involves the exercise of the sound judgment and discretion of the agency in a matter committed to it by the Legislature, the court will sustain the order if the action of the agency in reaching such conclusion is reasonably supported by substantial evidence. This does not mean that a mere scintilla of evidence will suffice, nor does it mean that the court is bound to select the testimony of one side, with absolute blindness to that introduced by the other. After all, the court is to render justice in the case. The record is to be considered as a whole, and it is for the court to determine what constitutes substantial evidence. The court is not to substitute its discretion for that committed to the agency by the Legislature, but is to sustain the agency if it is reasonably supported by substantial evidence before the court. If the evidence as a whole is such that reasonable minds could not have reached the conclusion that the agency must have reached in order to justify its action, then the order must be set aside."

When we apply the tests above set out we find that the order of the Real Estate Commission revoking the broker's license of Mrs. Leona Howard is reasonably supported by substantial evidence.

The judgment of the trial court is reversed and judgment is here rendered that the order of the Texas Real Estate Commission be affirmed.