

## ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

August 15, 2005

Mr. Dale Burnett                                    Opinion No. GA-0346
Executive Director
Texas Structural Pest Control Board                 Re: Whether the Structural Pest Control Board
Post Office Box 1927                                may regulate the removal of vertebrate animals
Austin, Texas 78767-1927                            from the vicinity of structures  (RQ-0314-GA)

Dear Mr. Burnett:

You ask whether, pursuant to section 1951.003 of the Texas Occupations Code and its use of the terms "rodents" and "other obnoxious or undesirable animals," the Texas Structural Pest Control Board (the "Board") may regulate the removal of "vertebrate animals" from around structures.[1] You state that the Board is increasingly concerned about "individuals who deal with the removal of vertebrate creatures from around structures." *See* Request Letter, *supra* note 1, at 1. You relate that these individuals consider themselves, because of their trapping services, to operate solely under the jurisdiction of the Texas Parks and Wildlife Department. *See id.* The Board's increasing interaction with such individuals and the different views of the regulatory authority of the Board and the Parks and Wildlife Department prompts you to seek our opinion on the scope of the Board's authority.[2] *See id.*

We recognize that section 1951.003 of the Occupations Code gives the Board jurisdiction that overlaps and potentially conflicts with jurisdiction of other state agencies. For example, the Texas Department of Agriculture has jurisdiction over the regulation of pesticides and herbicides, *see* TEX. AGRIC. CODE ANN. §§ 76.001-.009 (Vernon 2004); *see also* TEX. OCC. CODE ANN. § 1951.053 (pest control work regulated by Department of Agriculture), and the Texas Parks and Wildlife Department has jurisdiction over game, fur-bearing, and non-game animals. *See* TEX. PARKS & WILD. CODE ANN. §§ 12.001(a), 67.002(a), 71.002 (Vernon 2002). However, you do not inquire about the legal limits of the Board's regulatory authority with respect to the jurisdiction of other state agencies. Instead, you inquire only whether "[t]he Board [may] regulate the removal of vertebrate animals from around structures." Request Letter, *supra* note 1, at 1. Moreover, the challenge of construing the various agencies' enabling legislation and defining the legal parameters

---

[1]Letter from Dale Burnett, Executive Director, Texas Structural Pest Control Board, to Honorable Greg Abbott, Texas Attorney General (Jan. 26, 2005) (on file with Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

[2]*See also* Brief from Ann Bright, General Counsel, Texas Parks and Wildlife Department, to Honorable Greg Abbott, Texas Attorney General (Mar. 14, 2005) (on file with Opinion Committee).

of each agency's respective jurisdiction is complex and has untold consequences. In addition, the need to engage in such a task depends, in large part, on how the Board applies our construction of section 1951.003 of the Occupations Code. Therefore, we focus here solely on the scope of the Board's authority under section 1951.003 with respect to the specific animals about which you inquire and leave for another day the extent to which other agencies' authority limits the Board's authority.

You inquire specifically about the removal of "vertebrate animals." *See id.* The term "vertebrate animals" is not a statutory term but merely your characterization of the animals at issue. It encompasses a very large segment of the animal population. *See* MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 1313 (10th ed. 1993). Because of its broad scope, the definition of "vertebrate" does not provide much guidance as to the specific animals about which the Board is concerned. A brief from the Board informs us that the specific animals at issue here are "armadillos, squirrels, skunks, raccoons, [and] gophers."[3] We received information suggesting that feral dogs, alligators, bobcats, rabbits, coyotes, beavers, deer, and ducks are also of concern.[4] Where possible we will refer to all of the listed animals collectively.

Created in 1971 with the adoption of the Texas Structural Pest Control Act, *see* Act of May 31, 1971, 62d Leg., R.S., ch. 726, 1971 Tex. Gen. Laws 2363, 2363-65 (enacting article 135b-6, Revised Civil Statutes), *repealed and recodified by* Act of May 22, 2001, 77th Leg., R.S., ch. 1421, §§ 4, 13, 2001 Tex. Gen. Laws 4570, 4857-82, 5020, the Board is the "sole authority in this state for licensing persons engaged in the business of structural pest control." TEX. OCC. CODE ANN. § 1951.201 (Vernon 2004). However, the Occupations Code does not define "structural pest." Nor does it expressly give the Board jurisdiction over structural pests. Instead, the Occupations Code authorizes the Board to develop the standards and criteria for issuing business licenses, commercial applicator's licenses, noncommercial applicator's licenses, and technician's licenses to those "engaged in the business of structural pest control." *Id.* § 1951.203. A person is engaged in the business of structural pest control if

> the person performs, offers to perform, or advertises for or solicits the person's performance of any of the following services for compensation, including services performed as part of the person's employment:

---

[3]*See* Brief from Frank M. Crull, General Counsel, Texas Structural Pest Control Board, to Honorable Greg Abbott, Texas Attorney General (Mar. 22, 2005) (on file with Opinion Committee).

California implicitly recognizes the biological differences in those types of animals. The California structural pest control statute does not require a structural pest control license for those involved in the removal of "vertebrate pests." *See Merrifield v. Schwarzenegger*, No. 04-0498 MMC, 6,7, 2004 WL 2926164, * 3 (N.D. Cal. Apr. 21, 2004). Vertebrate pests "include, but are not limited to, bats, raccoons, skunks, and squirrels." *Id.*

[4]*See* Brief from Cliff Moore, President, Animal Services, Inc., to Opinion Committee, Attorney General of Texas (Mar. 17, 2005) (on file with Opinion Committee).

>> (1) identifying infestations or making inspections for the purpose of identifying or attempting to identify infestations of:
>>
>>> (A) arthropods, including insects, spiders, mites, ticks, and related pests, wood-infesting organisms, rodents, weeds, nuisance birds, and any other obnoxious or undesirable animals that may infest households, railroad cars, ships, docks, trucks, airplanes, or other structures or their contents;
>>>
>>> (B) pests or diseases of trees, shrubs, or other plantings in a park or adjacent to a residence, business establishment, industrial plant, institutional building, or street;
>>
>> (2) making oral or written inspection reports, recommendations, estimates, or bids with respect to an infestation described by Subdivision (1); or
>>
>> (3) making contracts, or submitting bids for services or performing services designed to prevent, control, or eliminate an infestation described by Subdivision (1) by the use of insecticides, pesticides, rodenticides, fumigants, allied chemicals or substances, or mechanical devices.

*Id.* § 1951.003.

It is well established that an administrative agency such as the Board,[5] a creature of statute, has only those powers clearly delegated by the legislature and those that are impliedly necessary to perform a delegated function or duty. *See Sexton v. Mount Olivet Cemetery Ass'n*, 720 S.W.2d 129, 137 (Tex. App.–Austin 1986, writ ref'd n.r.e.); *see also GTE Sw., Inc. v. Pub. Util. Comm'n*, 10 S.W.3d 7, 12 (Tex. App.–Austin 1999, no pet.). But "[c]ourts will not imply additional authority to agencies, nor may agencies create for themselves any excess powers." *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 220 (Tex. 2002) (citing *Key W. Life Ins. Co. v. State Bd. of Ins.*, 350 S.W.2d 839, 848 (Tex. 1961)). Moreover, courts will not by implication enlarge the meaning of any word in a statute beyond its ordinary meaning. *See Sexton*, 720 S.W.2d at 138. We are mindful of these fundamental principles as we examine section 1951.003.

Section 1951.003 defines the business of structural pest control in part by specific activities:

>> (1) identifying infestations or making inspections for the purpose of identifying or attempting to identify infestations of:

---

[5]The Texas Structural Pest Control Board is a legislatively created state agency. *See* Tex. Att'y Gen. Op. No. JC-0324 (2001) at 1.

[specified organisms];

(2) making oral or written inspection reports, recommendations, estimates, or bids with respect to an infestation described by Subdivision (1); or

(3) making contracts, or submitting bids for services or performing services designed to prevent, control, or eliminate an infestation described by Subdivision (1) by the use of insecticides, pesticides, rodenticides, fumigants, allied chemicals or substances, or mechanical devices.

TEX. OCC. CODE ANN. § 1951.003 (Vernon 2004). All activities involved in the business of structural pest control relate to "identifying *infestations* or making inspections for the purpose of identifying or attempting to identify *infestations* of: [the listed organisms]." *Id.* § 1951.003(1) (emphasis added); *see also id.* §§ 1951.003(2) ("with respect to an *infestation* described by Subdivision (1)") (emphasis added), .003(3) ("an *infestation* described by Subdivision (1)") (emphasis added). Thus, even if these animals are rodents, the Board has licensing authority over their removal only if they are animals that "infest." Similarly, even if these animals are "other obnoxious or undesirable animals that may infest households" or are "pests or diseases of trees, shrubs, or other plantings . . . adjacent to a residence," they must be ones that "infest" before the Board has regulatory authority over licensing those engaged in the business of their removal. *Id.* § 1951.003(1)-(3). We find no guidance as to what meaning to give the term "infest" as it relates to these vertebrate animals from Texas statutes, judicial opinions, or agency rule.

Nonetheless, we believe that the scope of the Board's regulatory authority with respect to these animals is absolutely predicated on whether they infest. *See id.* § 1951.003(1) ("identifying infestations or making inspections for the purpose of identifying or attempting to identify infestations. . . ."), .003(2) (referencing subdivision (1)), .003(3) (same). Despite the dispositive nature of the term infestation, the legislature has failed to define it in the statute. *See generally* TEX. OCC. CODE ANN. ch. 1951 (Vernon 2004). Moreover, while we construe undefined terms according to their common meaning, *see* TEX. GOV'T CODE ANN. § 311.011(b) (Vernon 2005) (Code Construction Act) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage."), the numerous dictionary definitions we have examined do not provide concrete guidance to enable us to legally define the term so that we may construe it in the context of this statute and these animals.

In the definitions we examined, there are two components – a component of damage and a component of quantity or numbers.[6] Both components are themselves vague and subjective and

---

[6]The term "infest," from which the term "infestation" derives, is defined as "to trouble greatly by numbers or by frequency of presence; to assail or annoy persistently and in numbers." WEBSTER'S NEW INTERNATIONAL DICTIONARY 1274 (2d ed. 1947). Another definition of the term "infest" is "to spread or swarm in or over in a troublesome manner." MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 598 (10th ed. 1993). As the term pertains to insects or animals, it

(continued...)

necessarily involve factual considerations. Resolving fact questions is generally outside the scope of the opinion process. *See* Tex. Att'y Gen. Op. No. GA-0003 (2002) at 1 (stating that the opinion process does not determine facts). Whether these vertebrate animals "infest" is a fact-intensive and animal-specific inquiry that can only be made by a thorough examination of the nature and behavior of the particular animal. We believe therefore that the question of whether these animals "infest" can be answered only by the legislature or the Board through its rulemaking authority.[7] Of course any determination by the Board would be subject to judicial review. *See Flores v. Employees Ret. Sys.*, 74 S.W.3d 532, 538 (Tex. App.–Austin 2002, pet. denied) (citing TEX. GOV'T CODE ANN. § 2001.174(2)(F)); *Tex. Real Estate Comm'n v. Howard*, 538 S.W.2d 429, 430 (Tex. Civ. App.–Houston [1st Dist.] 1976, writ ref'd n.r.e.) ("An administrative agency, though vested with discretion in its acts, must not exercise its powers arbitrarily or capriciously, and the reasonableness of its orders will be subject to judicial review."). Because the term "infestation" is dispositive of the scope of the Board's jurisdiction over the licensing of those involved in the removal of these animals and because we are unable to adequately define the term and then construe it as it relates to these animals, we are therefore unable to further construe section 1951.003 until such time as the term has been defined.

In sum, we conclude that the reach of section 1951.003 of the Occupations Code with respect to these animals depends on the definition and construction of the term infestation. Because defining the term infestation involves factual considerations that we cannot entertain, we are unable to give meaning to the term "infest" with respect to these animals. Only the legislature or the Board through its rulemaking authority may do that. In a rulemaking, we believe habitat, usual environment, and behavior are some of the factors that would direct the determination of whether these animals "infest" such that the Board has regulatory authority over the licensing of those involved in the removal of these animals.

---

[6](...continued)
requires those creatures to be "present (in a place or site) in large numbers, typically so as to cause damage or disease." THE NEW OXFORD AMERICAN DICTIONARY 869 (2001).

[7]An administrative agency such as the Board has no inherent authority and may exercise only the specific powers conferred on it by law. *See Sexton*, 720 S.W.2d at 137. "[W]ith respect to *a* power specifically granted the agency, the full extent of *that* power must be ascertained with due regard for the rule that the Legislature generally intends that an agency should have by implication such authority as may be *necessary* to carry out the specific power delegated, in order that the statutory purpose might be achieved." *Id.*; *see also* Tex. Att'y Gen. Op. No. GA-0022 (2003) at 3. The power to determine what particular plants and animals are subject to the Board's regulatory authority is a necessary prerequisite to the Board's specific authority to adopt standards and criteria regarding licenses issued for the removal of a particular plant or animal, *see* TEX. OCC. CODE ANN. § 1951.203 (Vernon 2004), and its authority to adopt rules regarding the methods and practices of structural pest control. *See id.* § 1951.205. Thus, the express rulemaking authority given to the Board in these sections, though limited, impliedly includes the power to determine whether a particular plant or animal "infests" as contemplated by section 1951.003.

## S U M M A R Y

Irrespective of whether any of the animals about which you inquire is a "rodent," an "obnoxious or undesirable animal that may infest households . . . or other structures," or a "pest[] of trees, shrubs, or other plantings" adjacent to a "residence, business establishment, industrial plant, institutional building, or street," pursuant to the language of section 1951.003, Texas Occupations Code, it must nevertheless be one that "infests" for the Texas Structural Pest Control Board to have regulatory authority over the licensing of those engaged in the business of its removal. Because fact considerations are involved in determining whether these animals infest, defining and construing the term as it pertains to vertebrate animals is a task for the legislature or the Board.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Charlotte M. Harper
Assistant Attorney General, Opinion Committee